**Marjorie SIMS, personally, and Marjorie Sims, as the next friend and guardian of Lara Sims, and Marjorie Sims, as the next friend and guardian of Margo Sims, Appellants (Plaintiffs),**

v.

**GENERAL MOTORS CORPORATION, a Delaware corporation, Appellee (Defendant).**

No. 87–39.

Supreme Court of Wyoming.

March 2, 1988.

Rehearing Denied March 23, 1988.

---

P. Richard Meyer of Spence, Moriarity & Schuster, Jackson, and Willis Geer of Willis Geer & Associates, Gillette, for appellants.

Robert W. Connor, Jr., Sheridan, and R.H. Bellingham and Tamara Annalora Scully of Moulton, Bellingham, Longo & Mather, P.C., Billings, Mont., for appellee.

Before BROWN, C.J., and THOMAS, CARDINE, URBIGKIT and MACY, JJ.

MACY, Justice.

Plaintiffs/appellants Marjorie Sims, Margo Sims, and Lara Sims brought an action against defendant/appellee General Motors Corporation for injuries suffered by them when a seat belt buckle in an automobile manufactured by General Motors allegedly failed to release after the vehicle caught on fire. The trial court granted General Motors directed verdicts on part of Marjorie's and Lara's claims and on both claims asserted by Margo. The jury found in favor of General Motors on all remaining issues of liability. Plaintiffs moved for a new trial, but that motion was denied by the trial court.

We affirm.

Plaintiffs present the following issues on appeal:

"ISSUE I

"WHETHER THE TRIAL COURT ERRED IN DIRECTING A VERDICT IN FAVOR OF THE DEFENDANT ON THE ISSUE OF MANUFACTURING DEFECT.

"ISSUE Ia

"WHETHER THE INFERENCE OF DEFECT RULE APPLIES WHEN A JURY QUESTION EXISTS AS TO CAUSES NOT ATTRIBUTABLE TO THE DEFENDANT.

"ISSUE II

"WHETHER THE TRIAL COURT ERRED BY EXCLUDING EVIDENCE OF PRIOR INCIDENTS OF SEAT BELT BUCKLES FAILING TO RELEASE, WHERE THE EVIDENCE WAS OFFERED TO PROVE DEFENDANT'S KNOWLEDGE OF AN INHERENT RISK ON THE ISSUES OF, 1)

FAILURE TO WARN, AND 2) NEGLI-GENCE.

## "ISSUE III

"WHETHER THE TRIAL COURT ERRED IN EXCLUDING DEFEND-ANT'S RELIABILITY PERFORMANCE DATA, ON THE GROUNDS THAT IT COULD NOT BE USED TO PROVE DE-FECT.

## "ISSUE IV

"WHETHER THE TRIAL COURT ERRED IN EXCLUDING LETTERS, CONSTITUTING ADMISSIONS, WRIT-TEN BY DEFENDANT IN RESPONSE TO COMPLAINTS FROM PEOPLE WHO COULDN'T GET THEIR SEAT BELT BUCKLES UNFASTENED.

## "ISSUE V

"WHETHER THE TRIAL COURT ERRED IN EXCLUDING TESTIMONY OF WITNESSES CONCERNING SIM-ILAR ACCIDENTS.

## "ISSUE VI

"WHETHER IN A STRICT LIABILITY ACTION, AN ALLEGATION OF A SPE-CIFIC DESIGN DEFECT PRECLUDES INTRODUCTION OF EVIDENCE MERELY BECAUSE IT DOES NOT TEND TO PROVE THE DESIGN DE-FECT ALLEGED, WHEN THE EVI-DENCE, 1) IS PROBATIVE ON NO-TICE, OR 2) SUPPORTS AN INFER-ENCE OF DEFECT.

## "ISSUE VII

"WHETHER THE TRIAL COURT ERRED IN FAILING TO LIMIT THE DEFINITION OF 'UNREASONABLY DANGEROUS' WHICH WAS GIVEN AS A JURY INSTRUCTION.

## "ISSUE VIII

"WHETHER THE TRIAL COURT ERRED IN GRANTING DEFENDANT A DIRECTED VERDICT ON THE CLAIMS BROUGHT BY MARGO SIMS."

On July 28, 1978, Marjorie was driving on U.S. Highway 14 west of Sheridan, Wyoming, in a 1974 two-door Chevrolet Chevelle Malibu accompanied by her daughters, Margo and Lara, when she noticed flames coming from the left rear of the vehicle. Marjorie immediately told her daughters that the automobile was on fire and instructed them to exit the vehicle as soon as it stopped.

When the automobile was stopped, Lara, who was seated in the front passenger seat, unlatched the passenger door. Margo, who was seated in the back of the vehicle, pushed her way out between the front passenger seat and the door frame. Marjorie attempted to open the door on the driver's side but was unable to do so because of the intensity of the fire. Lara could not exit the automobile because she could not get her seat belt buckle apart. Marjorie, realizing that Lara was having trouble, tried to open Lara's seat belt buckle. After having no success in getting the seat belt buckle open, Marjorie grasped Lara under her arm and groin and jerked upward and outward, freeing Lara. Lara and Marjorie then escaped from the car on the passenger's side. However, upon noticing that the vehicle was rolling backwards out of control, Marjorie returned to the driver's seat to put the car in park and again exited the car on the passenger's side.

Tragically, as a result of being in the flaming automobile, Marjorie and Lara received serious burns. Margo received minor burns while she was helping move Lara further away from the vehicle.

On July 26, 1983, plaintiffs brought an action against General Motors for injuries resulting from the failure of the seat belt buckle to open. Marjorie and Lara grounded their claims upon strict liability on the bases of manufacturing defect, design defect, failure to warn, and negligence as a result of negligent design, failure to test, failure to recall, and failure to warn. Margo founded her claims upon the same negligence theories as Marjorie and Lara and

added negligent infliction of emotional distress.

During discovery, plaintiffs obtained evidence of other incidents in which similar seat belt buckles in General Motors' automobiles had failed to open, data on product reliability monitoring tests performed by General Motors, and information about two other cases in which the occupants were trapped by their seat belts while they were in burning automobiles. However, the trial court excluded the introduction of all this evidence through a pretrial order in limine and at trial.

Prior to closing arguments, the trial court granted General Motors directed verdicts on the issue of strict liability on the basis of manufacturing defect and on both claims asserted by Margo. Also, the trial court gave its own jury instruction defining "unreasonably dangerous," even though plaintiffs had offered their own instruction for that term. Thereafter, the jury returned a verdict in favor of General Motors on all remaining issues of liability. Plaintiffs moved for a new trial, and that motion was denied by the trial court. This appeal followed.

I

Plaintiffs claim the court erred in directing a verdict for General Motors because that improperly placed the burden on plaintiffs to eliminate all other possible causes for the seat belt failure. According to plaintiffs, an inference that there was a defect existed by virtue of the failure itself, and it was for the jury to decide whether or not there were other causes not attributable to General Motors which kept the seat belt buckle from opening.

In *Ogle v. Caterpillar Tractor Co.*, Wyo., 716 P.2d 334 (1986), we held that the doctrine of strict liability in tort was a valid cause of action in Wyoming independent from those actions against a manufacturer or seller for negligence or breach of warranty. In that case, we adopted the Restatement (Second) of Torts § 402A (1965), with regard to the doctrine of strict liability in tort. That section provides:

"402A. Special Liability of Seller of Product for Physical Harm to User or Consumer

"(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if

"(a) the seller is engaged in the business of selling such a product, and

"(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

"(2) The rule stated in Subsection (1) applies although

"(a) the seller has exercised all possible care in the preparation and sale of his product, and

"(b) the user or consumer has not bought the product from or entered into any contractual relation with the seller."

As stated in comment g of section 402A, supra:

*"The seller is not liable when he delivers the product in a safe condition, and subsequent mishandling or other causes make it harmful by the time it is consumed. The burden of proof that the product was in a defective condition at the time that it left the hands of the particular seller is upon the injured plaintiff; and unless evidence can be produced which will support the conclusion that it was then defective, the burden is not sustained."* (Emphasis added).

From the language in comment g, it is clear that section 402A, supra, applies only when the product is shown to have been unreasonably dangerous at the time it left the seller's hands. There is, however, an inference that a product was defective at the time it left the seller's hands if a prima facie case can be presented that there was no abnormal use of the product or that there were no reasonable secondary causes for the defect. In *Valentine v. Ormsbee Exploration Corporation*, Wyo., 665 P.2d 452, 462 (1983), we quoted with approval

the rule set out in *Tweedy v. Wright Ford Sales, Inc.,* 64 Ill.2d 570, 2 Ill.Dec. 282, 285, 357 N.E.2d 449, 452 (1976):

"'A prima facie case that a product was defective and that the defect existed when it left the manufacturer's control is made by proof that *in the absence of abnormal use or reasonable secondary causes* the product failed "to perform in the manner reasonably to be expected in light of [its] nature and intended function."'" (Emphasis added.)

We, therefore, agree with plaintiffs' contention that the "inference of defect rule" is applicable in Wyoming with regard to product liability cases. We fail, however, to see how this rule is of any aid to plaintiffs in supporting their contention.

■ In this case, mere proof that the seat belt buckle malfunctioned was not sufficient to create an inference of a defect. It was plaintiffs' additional burden to present evidence that there was no abnormal use and no reasonable secondary causes for the malfunction. Plaintiffs not only failed to meet this burden but presented evidence to the jury that the malfunction may have been caused by a foreign particle, such as a piece of wood, a toothpick, a small piece of metal, a coin, a grain of sand, an interlock switch of the seat belt itself, or a small pebble, being introduced into the mouth of the buckle.

When faced with a directed verdict question, this Court's applicable standards of review are as follows:

"In reviewing the grant of a directed verdict by a trial court, consideration must be given to all evidence favorable to [the] party against whom the motion is directed, as well as to all reasonable and legitimate inferences which might be drawn therefrom. Whether or not the evidence so viewed is sufficient to create an issue for the jury is solely a question of law to be answered by the trial court. That court must determine whether or not the evidence is such that, without weighing the credibility of the witnesses, or otherwise, considering the weight of the evidence, there is but one conclusion as to [the] verdict which men of reason

could reach." *Town of Jackson v. Shaw,* Wyo., 569 P.2d 1246, 1250 (1977) (citations and footnote omitted).

"'In determining whether a verdict should have been directed, the appellate court applies the same standard as does the trial court in passing on the motion originally. * * * Whether a verdict should be directed is a question of law and on those questions litigants are entitled to full review by the appellate court without special deference to the views of the trial court.' 9 Wright and Miller, Federal Practice and Procedure, Civil, § 2536, p. 595, and § 2524, pp. 541–542." *Carey v. Jackson,* Wyo., 603 P:2d 868, 877 (1979).

"[S]ince a directed verdict deprives the parties of a determination of the facts by a jury, such motion should be cautiously and sparingly granted." *Cody v. Atkins,* Wyo., 658 P.2d 59, 61 (1983).

Even though we give plaintiffs every favorable consideration and recognize the difficulty in sustaining a directed verdict because of our standards of review, we cannot say that the trial court acted improperly when it granted directed verdicts to General Motors. Simply stated, plaintiffs failed to meet the burden of proof placed upon them in this case, and General Motors was entitled to directed verdicts as a matter of law concerning the claims of manufacturing defects.

## II

■ In plaintiffs' second through sixth issues, they contend that the trial court erred when it excluded the use of particular evidence from the trial. Specifically, plaintiffs allege that it was improper for the trial court to eliminate General Motors' reliability performance (RPM) data, General Motors' letters (1241 reports) in response to consumer complaints, National Highway Traffic Safety Administration (NHTSA) consumer complaints, NHTSA computer printouts of complaints concerning General Motors' seat belt buckles, General Motors' warranty data, comments by plaintiffs' expert witnesses or cross-examination of General Motors' expert witnesses concerning

such evidence, and testimony concerning two cases in which individuals had been trapped by seat belt buckles in burning automobiles. We choose to collectively address these issues asserted by plaintiffs because of the similarity in their nature and argument.

In the case of *Jahnke v. State*, Wyo., 682 P.2d 991, 1005 (1984), we summarized our long standing standard of review regarding the admissibility of evidence:

"The rule which this court has applied with respect to rulings as to admissibility of evidence is articulated in *Taylor v. State*, Wyo., 642 P.2d 1294, 1295 (1982), as follows:

'It has been held generally that the admission of evidence is within the sound discretion of the trial court and absent a clear abuse of discretion will not be disturbed. It is also the general rule that the foundation, relevance, competency, materiality, and remoteness are within the sound discretion of the trial court and will be upheld on appeal absent a clear abuse of discretion.' (Footnotes omitted.)

The burden of establishing the clear abuse of discretion must be assumed by the party who attacks the ruling of the trial court. That party must establish that the ruling of the trial court was erroneous and that it did affect substantial rights of the party. The trial court in the exercise of its discretion can exclude even relevant evidence when there are countervailing considerations such as 'if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time or needless presentation of cumulative evidence.' Rule 403, W.R.E.

"The definition that this court has espoused of an abuse of discretion is found in *Martinez v. State*, Wyo., 611 P.2d 831, 838 (1980), where it is stated as follows:

'* * * An abuse of discretion has been said to mean an error of law committed by the court under the circumstances. * * *'

\* \* \* \* \* \*

'In the context of evidentiary rulings at trial, this court has long adhered to the doctrine that a sufficient offer of proof is necessary so that this court may be adequately apprised of the nature of the excluded testimony. The dual purpose of this requirement is to enable the trial court to be fully advised in the exercise of its discretion regarding the admission of evidence, and to enable the reviewing court to determine if prejudicial error resulted from the exclusion of the proffered testimony.' *Garcia v. State*, Wyo., 667 P.2d 1148, 1155 (1983)." (Citations omitted.)

■ Turning to the issues, we begin by holding that, although argument regarding all these issues was had by each party during a pretrial motion hearing, they are properly before this Court for our review. Although General Motors asserts that plaintiffs did not preserve the exclusion of such evidence for consideration on appeal, we note that Rule 103(a), W.R.E., specifically states:

"(a) *Effect of erroneous ruling.*—Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and

\* \* \* \* \* \*

"(2) Offer of Proof.—In case the ruling is one excluding evidence, the substance of the evidence was made known to the court by offer or was apparent from the context within which questions were asked."

The committee note to this rule provides:

"Under Rule 103(a), it is not necessary to re-offer evidence which has been suppressed by action of the court on a pretrial motion, such as a motion in limine or a motion to suppress, or to make a further objection at the time of trial to evidence which has previously been ruled admissible on such a pretrial motion."

At the hearing, counsel for plaintiffs continually mixed the discussion of these topics, failed to produce more than one, and in some instances none, of the separate documents contained in each of the voluminous files intended to be presented at trial, and sought the admission in bulk of such evidence.[1] The trial court ruled that such evidence was not admissible on the basis of unreliability, hearsay, and relevance and because the prejudicial effect of such evidence outweighed its probative value. At trial, plaintiffs again attempted to introduce some of the aforementioned evidence, but the trial court denied its admission.

Speaking of similar evidence which also was excluded from trial, the case of *Uitts v. General Motors Corporation*, 411 F.Supp. 1380, 1382–83 (E.D.Pa.1974), affirmed without opinion 513 F.2d 626 (3d Cir.1975), states:

"The reports offered in the present case do not have [an] indicia of reliability. They include statements by owners concerning the occurrence of an accident and reports by General Motors personnel concerning inspection of the involved vehicle, when possible. In addition, some of the reports contain letters of owners and police reports. The 1241 reports offered by plaintiffs were not the result of a continued and detailed investigation, but rather served merely as a preliminary investigation involving only the taking of a statement from the driver and if possible an inspection of the vehicle in question. The persons compiling these reports were not required to assemble all the factual data, or determine the cause or extent of the damage. They were charged with merely reporting the statements of the owners without any duty to cross examine or investigate further. The purpose of these reports was to alert defendant to possible difficulties with its product. They were not intended to commit the defendant in any way and as such were not intended to be final or amount to a complete analysis of a particular accident or its cause * * *.

"Even if we were to decide that the reports did contain sufficient reliability for admission into evidence, we would also have to find that the reports are relevant and probative of the issue of causation. * * * The 1241 reports offered in the present case concerned accidents other than the one which is being adjudicated. Clearly, an investigation into the cause of the very accident being litigated * * * would be relevant. The same result, however, does not obtain when the reports sought to be introduced relate to other accidents the cause of which may or may not have already been litigated. A review of these reports shows that various malfunctions were alleged to have caused the accident. Because of the nature of the reports we do not believe them to be admissions by the defendant, and therefore to permit them to be considered by the jury would be tantamount to allowing the persons making the statements to testify against defendant without being subject to cross examination or required to take an oath. Therefore, any probative value these reports might have is outweighed by their prejudicial nature.

"Proof of prior accidents or occurrences [is] not easily admitted into evidence, since [it] can often result in unfair prejudice, consumption of time and distraction of the jury to collateral matters. The introduction of these reports into evidence in this case would have had this very result. * * * With respect to these reports plaintiff is attempting to introduce proof of accidents involving similar, not necessarily identical, vehicles. An examination of these reports reveals that some of them contain either highly inflammatory letters of owners or police

---

1. The attempted admittance of evidence in bulk without the production of each separate document for review by the trial court is questionable in that the presentation may lack the proper foundation for admittance of the evidence. Such antics place the trial court in the precarious position of deciding the admissibility of evidence without the benefit of knowing exactly what evidence is being offered. However, in its own discretion, the trial court in this case allowed the presentation of the offered evidence in such manner, and we, therefore, give deference to the trial court's decision in this regard.

reports relating to details of the accidents, which would clearly be inadmissible. Plaintiffs made no attempt to limit or delete the hearsay portions of these reports. Rather, plaintiffs insisted that each of the reports without exception be admitted into evidence. Defendant, in order to minimize the prejudicial effect of these reports, would have had to go through each one individually with the jury. The result would have been a mini-trial on each of the thirty-five reports offered by plaintiffs. This would lengthen the trial considerably and the minds of the jurors would be diverted from the claim of the plaintiffs to the claims contained in these reports. Plaintiffs chose not to attempt to prove a specific malfunction or defect of the vehicle, but rather, to rely upon the *MacDougall*[2] theory to establish liability. The effect of *MacDougall* is to lessen plaintiffs' burden of proof by allowing plaintiffs to establish a prima facie case merely by showing the occurrence of a malfunction in the absence of abnormal use and reasonable secondary causes. This lower burden of proof, however, does not result in a lower standard of admissibility under the rules of evidence. If plaintiffs were attempting to prove the existence of a specific defect or malfunction it is clear that the admission into evidence of the occurrence of similar accidents would require a showing that those accidents were caused by the same malfunction or defect. Simply because plaintiffs are proceeding under the *MacDougall* theory we do not believe they can introduce evidence of accidents which may involve a variety of causes, and then let the jury guess which of those causes was responsible for the accident in the present case. [W]e believe the prejudicial nature of them far outweighs any probative value they might have, and accordingly we do not think it was error to exclude them from the record." (Citations and footnotes omitted.)

The rationale of the *Uitts* case is applicable to this case. We cannot say that the trial court erred in excluding the evidence of General Motors' RPM data, 1241 reports and warranty data, NHTSA consumer complaints or computer printouts, comments by plaintiffs' expert witnesses or cross-examination of General Motors' expert witnesses upon such evidence, and testimony concerning two cases in which individuals had been trapped in burning automobiles by seat belt buckles. While we recognize that the *Uitts* case deals only with the acceptance of 1241 reports into evidence, we hold that all the subject evidence proffered by plaintiffs in this case contained one or more, if not all, of the pitfalls found in the evidence sought to be admitted in *Uitts*.

Further, although plaintiffs complain that this evidence was offered to prove that General Motors had knowledge of previous malfunctions of its seat belts—an essential element of the claims asserted by plaintiffs—such contentions are without merit. General Motors admitted that it was aware that its seat belts and other products malfunctioned on occasion.

We hold that the evidence sought to be admitted by plaintiffs was properly excluded by the trial court and that the trial court did not abuse its discretion in excluding such evidence.

III

■ Plaintiffs also assert that the trial court erred when it refused to give the jury their requested instruction pertaining to the application of the concept of "unreasonably dangerous" and instead gave its own instruction regarding the term. The instruction offered by plaintiffs read as follows:

"A product is defective when it is in an unreasonably dangerous condition. The term 'unreasonably dangerous' means unsafe when put to a use that is reasonably foreseeable considering the nature and function of the product."

---

2. *MacDougall v. Ford Motor Company,* 214 Pa. Super. 384, 257 A.2d 676 (1969). The theory asserted in that case is essentially the same as in the cases of *Valentine v. Ormsbee Exploration Corporation* and *Tweedy v. Wright Ford Sales, Inc.* mentioned previously.

This instruction parallels the alternate definition found in the Wyoming Civil Pattern Jury Instructions, No. 11.04, which cites section 402A(i) of the Restatement (Second) of Torts, supra. The instruction given the jury by the trial court provided:

"A product is defective when it is in an unreasonably dangerous condition. The term 'unreasonably dangerous' means unsafe when put to a use that is reasonably foreseeable considering the nature and function of the product and its uses."

This instruction is the same as the initial definition given in W.C.P.J.I., No. 11.04, except that the words "and its uses" were added at the end.

Plaintiffs contend that the instruction given by the trial court imposed a risk-benefit theory wherein the consumer is required to prove that the manufacturer could have used a safer design and that the benefit from the alternative design outweighed the risk or cost of that design. Alternatively, plaintiffs conclude that their proposed instruction more appropriately described the consumer expectation test as enunciated by section 402A, supra. For these reasons, plaintiffs summarily complain that the instruction given by the trial court did not conform with W.C.P.J.I., No. 11.04, that it extended beyond the definition set forth in section 402A, supra, and that the definition of "unreasonably dangerous" given the jury was ambiguous, unclear, and subject to misinterpretation. We do not agree.

In the case of *Norman v. State*, Wyo., 747 P.2d 520, 523 (1987), quoting *Scadden v. State*, Wyo., 732 P.2d 1036, 1053 (1987), we recently enunciated our applicable standard of review in cases involving issues concerning the appropriateness of instructions given a jury:

" 'The general rule in reviewing questions involving instructions is that the trial judge is afforded latitude to tailor the instructions to the facts of the case, and reversible error will not be found as long as the instructions when viewed as a whole and in the context of the entire trial fairly and adequately cover the issues.' "

After review of the instruction given by the trial court, all of the instructions as a whole allowed to go before the jury, and the facts of this case, we determine that the jury was instructed properly regarding the doctrine of strict liability as expressed in section 402A, supra, adopted by this Court. We fail to recognize any merit in plaintiffs' contention that the instruction given by the trial court did not conform with W.C.P.J.I., No. 11.04. While we admit that this Court does not follow a risk-benefit theory, we cannot see how the instruction given by the trial court imposed such a burden on plaintiffs or the jury. A careful reading of section 402A, supra, reveals that, as a condition precedent to strict liability becoming operative in a particular case, the product sold must be "unreasonably dangerous" to the user or consumer. The instruction given by the trial court sufficiently apprised the jury of the relative meaning of that term with regard to a strict liability theory.

The trial court did not abuse its discretion or commit reversible error in refusing to give the instruction requested by plaintiffs and in giving its own instruction.

## IV

■ In plaintiffs' last issue, they assert in summary form that the trial court erred when it issued a directed verdict to General Motors regarding Margo Sims' claims of negligence and negligent infliction of emotional distress.

In *Gates v. Richardson*, Wyo., 719 P.2d 193 (1986), we recognized that the claim of negligent infliction of emotional distress was actionable in the state of Wyoming. We stated:

"To summarize all of our limitations on this tort [negligent infliction of emotional distress], we hold that the class of plaintiffs who may bring an action for negligent infliction of emotional distress consists of those who could bring, at least under some set of circumstances, a wrongful death action for the primary victim's death. The primary victim must

die, or suffer serious bodily injury as that term is defined in the Wyoming Criminal Code. The plaintiff must observe either the infliction of the fatal or harmful blow or observe the results of the blow after its occurrence without material change in the condition and location of the victim. *Once these conditions are satisfied, the case can go forward under normal negligence principles. The defendant must have been negligent and his negligence must be the proximate cause of the plaintiff's mental injuries."* Id. at 200–01 (emphasis added).

Margo failed to meet her burden of proof in showing that her emotional injuries were proximately caused by any negligence on the part of General Motors. As evidenced in the record, the jury found by special verdict that General Motors was negligent but did not attribute such negligence as a direct cause of the injuries sustained by plaintiffs. In order for a plaintiff to recover on a claim of negligent infliction of emotional distress, that plaintiff must show that the emotional distress resulted from death or serious physical injury to persons within a specified group *as a result of the defendant's negligence.* See *Versland v. Caron Transport,* 206 Mont. 313, 671 P.2d 583 (1983), and Comment, *Dillon Revisited,* 43 Ohio St. L.J. 931 (1982), cited with approval in *Gates v. Richardson.*

Also, in proving General Motors was directly negligent in proximately causing the injuries she sustained, Margo did not meet the requisite burden placed upon her. A plaintiff claiming direct negligence on the part of a defendant must prove that the defendant's action or inaction was negligent and that such negligence proximately caused the injury sustained.

Applying our standards of review previously mentioned regarding the evaluation of the granting of a directed verdict by a trial court, we hold that the trial court acted properly as a matter of law when it granted a directed verdict to General Motors regarding Margo Sims' claims.

Affirmed.

URBIGKIT, J., files a dissenting opinion.

URBIGKIT, Justice, dissenting.

I dissent.

Close perception of the logical kind suggests that this court, and perhaps segments of the American adjudicatory system, postulates different evidentiary standards, dependent upon utilization for criminal prosecution as denied to defense and now also denied to plaintiffs in civil cases.[1] I dissent from Section II of the decision encompassing a denial to plaintiff of information available to document defendant's product failure. Weight and contendable validity should be retained as a jury-fact-finder function. Otherwise we permit the judge to pretry matters of evidentiary conflict.

Prejudice aside, which introductory disability we have regularly denied criminal defendants, evidence of similar problems and mechanical failures, accommodates in logic relevance a definable degree of probability. Discretion in the context of *Martin v. State,* Wyo., 720 P.2d 894 (1986), and evidentiary exclusion of relevant and informative facts, are not synonymous within my concept of the proper operation of the justice-delivery system. Asbestosis, all-terrain three-wheelers, and intra-uterine devices should have taught us that great damage is caused and many deaths occur when product danger or misfunction are ignored by the contamination spreaders.

If you are socially, or as in some states criminally, obligated to buckle up, countervailing capacity to unbuckle should not be denied by product failure when emergency descends. Whether frantic misfunction of the user or factual nonoperation of a defective product, the question should be accorded factual contemplation by the community-represented jury for the justice decision.

---

1. *" ' * * * as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.'* (Emphasis added.)" *Brown v. State,* Wyo., 736 P.2d 1110, 1111 (1987), quoting Rule 404, W.R.E.

*Based on relevantly informative evidence* as would be afforded by similar problems, I would find a proper factual form for the plaintiff to explore.

I also differ and dissent from the decisional approval of the directed verdict in Section IV. If a defective product and constituent negligence existed, reason is totally missing to ascribe decision justification in proximate-cause criteria. Otherwise you assume to deny the premise in order to derive a negative conclusion. Validity of the premise should be left to the fact finder, and consequent proximate cause surely then cannot be denied by directed-verdict legal conclusion. *Vassos v. Roussalis,* Wyo., 658 P.2d 1284 (1983); *Holstedt v. Neighbors,* Wyo., 377 P.2d 181 (1962); *In re Draper's Estate,* Wyo., 374 P.2d 425 (1962). Without question, and after all, it was the delayed extrication from the seat belt that caused all damage for which claim in this case is made.

A current comprehensive and well-considered analysis of proximate cause in products-liability cases is found in Fischer, *Products Liability—Proximate Cause, Intervening Cause, and Duty,* 52 Mo.L.Rev. 547 (1987).