**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**February 19, 2016**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

WALLACE TOLMAN; JEANETTE
TOLMAN,

     Plaintiffs - Appellants,

v.

STRYKER CORPORATION,

     Defendant - Appellee.

No. 15-8044
(D.C. No. 2:13-CV-00013-ABJ)
(D. Wyo.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **GORSUCH**, **McKAY**, and **BACHARACH**, Circuit Judges.
_____

    After Wallace Tolman broke his hip and femur in an ATV accident, a surgeon implanted a nail to stabilize the bones while they healed. Some months later, Mr. Tolman's doctor told him he had healed enough to begin walking without crutches, so as to put mild stress on the bones and encourage further healing. But the stress proved too much: the nail broke, the bone broke with it, and Mr. Tolman, despite three more surgeries, suffered permanent injury. Mr. Tolman and his wife sued the

---

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

nail's manufacturer, Stryker Corporation, asserting claims of negligence, strict products liability, and loss of consortium.

The district court granted summary judgment to Stryker Corporation on all three claims. The negligence and strict liability claims, it held, failed because the Tolmans had not produced evidence the nail was defective. The loss-of-consortium claim also failed since it depended on the negligence and strict liability claims. The Tolmans have not challenged the district court's ruling on the consortium claim, so their appeal depends entirely on whether the district court erred in granting summary judgment as to negligence and strict liability. We hold that it did not.

The Tolmans acknowledge that, under Wyoming law, both negligence and strict products liability require them to prove the nail was defective. *See McLaughlin v. Michelin Tire Corp.*, 778 P.2d 59, 64 (Wyo. 1989). Although the Tolmans have no evidence of any specific defect, they can still make a prima facie case by relying on an inference of defect. *See Sims v. Gen. Motors Corp.*, 751 P.2d 357, 361 (Wyo. 1988). To do so, however, "[i]t is not enough to show that an injury occurred during use of the product," *Rohde v. Smiths Med.*, 165 P.3d 433, 437 (Wyo. 2007), or even that "the product failed 'to perform in the manner reasonably to be expected in light of [its] nature and intended function,'" *id.* at 438 (quoting *Sims*, 751 P.2d at 361). They must also present "proof" that the product's failure occurred "in the absence of . . . reasonable secondary causes." *Id.* (quoting *Sims*, 751 P.2d at 361).

Stryker has identified a reasonable secondary cause: "bone nonunion," the failure of Mr. Tolman's fractures to heal adequately. To show this secondary cause is

2

reasonable, Stryker points to the warning it distributed with the nail: "These devices can break when subjected to the increased loading associated with delayed unions and/or non-unions. . . . If healing is delayed or does not occur, the appliance may eventually break due to metal fatigue." (Appellants' App. at 114.) *Cf. id.* at 438 (quoting a similar medical device warning as evidence that a particular secondary cause was reasonable).

To show that nonunion was in fact a secondary cause of the nail's failure, Stryker cites Mr. Tolman's medical records. Before the nail broke, Mr. Tolman's doctor wrote that the fractures showed signs of healing and expressed optimism they would eventually heal, but he plainly did not believe they had finished healing. (Appellants' App. at 81, 82.) After the nail broke, the doctor's diagnosis was "Failed gamma nail with nonunion." (*Id.* at 83.) He explained this diagnosis as follows: "We have been watching this. There was a bony defect, and our plan had been for him to return to clinic, and if he was showing no sign of healing, we would consider bone grafting. However, the gamma nail has now failed." (*Id.*) Later records tell the same story: "[Mr. Tolman] had a severely comminuted extended right subtrochanteric hip fracture which underwent fixation. He healed everything distally, *but there was a nonunion* of the subtrochanteric and he failed the gamma nail." (*Id.* at 86 (emphasis added).)

We can express all this in less technical terms: Mr. Tolman's injury was not a clean break, but rather a "comminuted" fracture that broke the bone into several pieces. Much of the damage healed before the nail broke, but the doctor was

3

concerned that a particular part of the fracture was not healing adequately. The doctor's concern was justified, and the inadequate healing contributed to the failure of the nail.

The Tolmans contest this line of reasoning with two arguments. They argue first that Stryker has misinterpreted the medical records—that in fact, the bones had healed adequately, and that the "nonunion" mentioned in the records was a consequence of the nail breaking rather than a cause. But we are not persuaded. As the above discussion shows, the Tolmans' characterization of the medical records is not plausible.[1]

The Tolmans argue second that, even if nonunion was a secondary cause of the nail's failure, it was not a reasonable secondary cause. According to the Tolmans, the nail "failed at its designed task, during its normally designated time frame. It failed during the normal healing process when Mr. Tolman's bones where [sic] healing, and needed the stability of the nail more than ever." (Appellants' Br. at 16.)

This argument might be persuasive, except that it has no foundation in the record. The Tolmans try to support it with a series of citations to Mr. Tolman's medical records, but the records speak neither to the "designed task" and "time frame" of the nail nor to the reasonableness of nonunion as a cause of the nail's failure. The Tolmans also try to support their assertions with a series of citations to

---

[1] Stryker has argued that the medical records were not authenticated and thus should not be considered, leaving the Tolmans with no evidence to support their claim. However, the district court did not consider this argument—presumably because it ruled for Stryker on other grounds—and we will follow its lead.

their expert witness designations, but such designations are not evidence. The Tolmans never deposed their designated experts, and the experts' actual opinions remain unknown to us.

In short, the Tolmans have not produced sufficient evidence to qualify for an inference of defect under Wyoming law. Consequently, they have not made a prima facie case for negligence or strict products liability, and we must **AFFIRM**.

Entered for the Court

Monroe G. McKay
Circuit Judge