2007 WY 134

**Richard Dean ROHDE, Appellant (Plaintiff),**

v.

**SMITHS MEDICAL, d/b/a Sims Deltec, Inc., A Minnesota Corporation, Appellee (Defendant).**

No. 06–213.

Supreme Court of Wyoming.

Aug. 22, 2007.

Michelle L. Rognlien of Bowman and Brooke, LLP, Minneapolis, Minnesota. Argument by Mr. Mincer.

Before VOIGT, C.J., and GOLDEN, HILL, KITE, and BURKE, JJ.

KITE, Justice.

[¶ 1] Mr. Rohde sued Smiths Medical d/b/a Sims Deltec, Inc. (Smiths Medical), the manufacturer of a venous access device which fractured after it was inserted into his chest to administer chemotherapy treatment, claiming the device was defective. The district court granted summary judgment in favor of Smiths Medical because Mr. Rohde did not present evidence ruling out reasonable secondary causes of the fracture so as to establish that the device was defective under the inference of defect rule.

[¶ 2] We affirm.

## ISSUES

[¶ 3] Mr. Rohde articulated a single issue in his opening brief: [1]

    I.  Did the trial court err when it held that the inference of defect rule is inapplicable to the case at bar?

Smiths Medical restated the appellate issue as:

In this products liability case, did the District Court correctly grant summary judgment for Appellee Smiths Medical where Appellant Richard Rohde failed to produce any evidence of a defect in the design or manufacture of, or warnings related to, the PORT–A–CATH® medical device at issue?

## FACTS

[¶ 4] In March 2001, Mr. Rohde was diagnosed with Hodgkin's lymphoma.[2] He underwent chemotherapy treatment which was initially administered through a vein in his arm. In July 2001, Mr. Rohde's oncologist, Banu Symington, M.D., recommended that

Representing Appellant: Katherine L. Mead and Bradford S. Mead of Mead & Mead, Jackson, Wyoming. Argument by Ms. Mead.

Representing Appellee: Richard A. Mincer of Hirst & Applegate, Cheyenne, Wyoming;

---

1. Mr. Rohde states other issues in his reply brief. We do not need to address those issues to decide this case.

2. Hodgkin's lymphoma is commonly known as Hodgkin's disease, and it is a cancer of the lymph system. *Webster's Third New International Dictionary* 1076 (2002).

he have a venous access device implanted to facilitate his chemotherapy treatments. On July 20, 2001, P. George Poore, M.D., a vascular surgeon at St. John's Hospital in Jackson, Wyoming, implanted a Port–A–Cath venous access device manufactured by Smiths Medical in Mr. Rohde's upper chest between his clavicle and first rib.

[¶ 5]   The Port–A–Cath is designed to be implanted completely under the skin, usually in the chest or arm. Catheter tubing is inserted into the patient's blood system and attached to a portal consisting of a small metal chamber sealed at the top with a silicone septum. It allows medications or fluids to be delivered directly into the bloodstream by injection through the skin and into the portal.

[¶ 6]   Smiths Medical provided physicians with instructions for the Port–A–Cath which stated that there was a risk the device could fracture as a result of compression between the clavicle and first rib. Dr. Poore advised Mr. Rohde of some risks associated with the implantation, but did not tell him there was a risk that the device could fracture while implanted in his body because the doctor believed the risk was so slight. Dr. Poore examined the Port–A–Cath prior to implantation in Mr. Rohde's chest and did not notice any defects. Dr. Poore's surgical records indicated that he had some minor difficulty implanting the device because Mr. Rohde had a large clavicle and his tissue was resistant to the needle used in the procedure. Despite those difficulties, Dr. Poore was able to successfully implant the Port–A–Cath and determined it was working properly.

[¶ 7]   Over the next several months, Mr. Rohde received chemotherapy treatments utilizing the Port–A–Cath device. It seemed to work properly, although Mr. Rohde had to lie on his back while receiving the treatments in order for the device to work. In the fall of 2001, Dr. Symington decided that Mr. Rohde could cease chemotherapy treatments. She recommended, however, that the Port–A–

Cath remain in place because there was "a very high likelihood" that Mr. Rohde's cancer would return within the next year or two, necessitating further treatment. She directed Mr. Rohde to have the Port–A–Cath flushed periodically to guard against the formation of blood clots.

[¶ 8]   In November 2001, Mr. Rohde began experiencing pain during and after flushing of the Port–A–Cath. He treated the pain with a heating pad and ice therapy. On December 4, 2001, Mr. Rohde complained of pain during the flushing process. Dr. Symington suspected a blood clot had formed and ordered a venous dye study to check for a clot. Although she intended for the dye to be administered through the Port–A–Cath to test its patency, the doctor performing the procedure inserted the dye through Mr. Rohde's veins; consequently, the Port–A–Cath was not tested at that time. The venous dye study did not reveal a blood clot.

[¶ 9]   On January 17, 2002, Mr. Rohde began to bleed from the Port–A–Cath. Medical tests revealed that a six to seven centimeter section of the catheter tubing had fractured off from the remainder of the Port–A–Cath and migrated through Mr. Rohde's heart to his pulmonary artery. Thomas Cunningham, M.D., an interventional radiologist, retrieved the fragment from Mr. Rohde's pulmonary artery. Before discarding the broken piece, Dr. Cunningham looked at it and noticed that, although one end looked normal and smooth, the other end had a slightly irregular or jagged edge. Dr. Poore subsequently removed the remainder of the Port–A–Cath from Mr. Rohde's chest and discarded it. While examining that piece, Dr. Poore noted that, other than the fact it was shorter, it looked essentially the same as when he implanted it.

[¶ 10]   In 2004, Mr. Rohde sued St. John's Medical Center,[3] Dr. Poore[4] and Smiths Medical. Mr. Rohde claimed Smiths Medical was strictly liable for the injuries he incurred because the Port–A–Cath fractured. He as-

---

**3.** Mr. Rohde voluntarily dismissed St. John's Medical Center from the action before it answered the complaint.

**4.** Dr. Poore filed a motion for summary judgment, and, after discovery, Mr. Rohde decided not to contest the doctor's motion. Consequently, the district court granted summary judgment in favor of Dr. Poore.

serted the Port–A–Cath was defective and Smiths Medical had failed to adequately warn about the risk of fracture of the device.

[¶ 11] After extensive discovery, Smiths Medical filed a motion for summary judgment and submitted testimony and exhibits indicating there was no evidence of a defect in the Port–A–Cath and Smiths Medical had adequately warned Mr. Rohde's physicians about the risks associated with the Port–A–Cath, including the possibility of fracture. In response, Mr. Rohde did not present any evidence to establish a specific defect in the Port–A–Cath, but asserted the court should allow his strict liability claim to proceed under the inference of defect rule recognized in *Sims v. General Motors Corp.*, 751 P.2d 357 (Wyo.1988). Specifically, Mr. Rohde argued that he was entitled to an inference the Port–A–Cath was defective simply because it fractured while implanted in his body. Although he asserted that Dr. Poore did not warn him about the risk of fracture, he did not respond to Smiths Medical's argument regarding the adequacy of the warnings it provided to physicians about the risk.[5]

[¶ 12] In reply to Mr. Rohde's inference of defect argument, Smiths Medical asserted that to qualify for an inference that the Port–A–Cath was defective under *Sims,* Mr. Rohde was required to show that a malfunction occurred with normal use and there were no reasonable secondary causes of the malfunction. The manufacturer maintained the evidence showed that compression between the clavicle and first rib, a known risk, was a reasonable secondary cause of the fracture of Mr. Rohde's Port–A–Cath. In particular, Smiths Medical relied upon the opinion of Dr. Poore's expert witness, Michael Fenoglio, M.D., that Mr. Rohde's Port–A–Cath broke because of clavicle/first rib compression exacerbated by his weight gain after the device was implanted. Mr. Rohde failed to offer any evidence showing that the fracture occurred for some other reason or to counter, in any way, Smiths Medical's showing that

compression was a reasonable secondary cause of the fracture of his Port–A–Cath.

[¶ 13] The district court rejected Mr. Rohde's inference of defect argument because he failed to present evidence to counter that offered by Smiths Medical. The court also ruled that fracture was an inherent risk associated with use of the Port–A–Cath and Smiths Medical warned physicians about that risk. On appeal, Mr. Rohde contests the district court's refusal to allow his products liability claim to proceed under the inference of defect rule.

## STANDARD OF REVIEW

[¶ 14] W.R.C.P. 56(c) governs summary judgment and states that a motion for summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

[¶ 15] Our standard for reviewing the district court's decision to grant a summary judgment is *de novo.* We evaluate the propriety of a summary judgment by employing the same standards and examining the same material as the district court. We consider the record in the light most favorable to the party opposing the motion, affording to that party the benefit of all favorable inferences that may be drawn from the record. If upon review of the record, doubt exists about the presence of issues of material fact, that doubt must be resolved against the party seeking summary judgment. A genuine issue of material fact exists when a disputed fact, if proven, would establish or refute an essential element of a cause of action or a defense that a party has asserted. *Cook v. Shoshone First Bank,* 2006 WY 13, ¶ 11, 126 P.3d 886, 889 (Wyo.2006); *Linton v. E.C. Cates Agency, Inc.,* 2005 WY 63, ¶¶ 6–7, 113 P.3d 26, 28 (Wyo.2005).

---

5. The "learned intermediary" principle generally states that a manufacturer has a duty to adequately warn medical professionals about risks associated with use of healthcare products. So long as it complies with that obligation, the manufacturer may rely on medical professionals, as learned intermediaries, to properly warn their patients of the risks. *See, e.g., Jacobs v. Dista Products Co.,* 693 F.Supp. 1029, 1030 (D.Wyo. 1988).

## DISCUSSION

[¶ 16]   Mr. Rohde claims the district court erred when it granted summary judgment on his claim that Smiths Medical was strictly liable for the injury he suffered as a result of the Port–A–Cath's fracture.   He argues the district court erroneously refused to apply the inference of defect rule to allow his claim to proceed.   In order to establish the proper context for our discussion of Mr. Rohde's argument, we will briefly review the law of products liability in this state.

[¶ 17]   In *Ogle v. Caterpillar Tractor Co.*, 716 P.2d 334, 342–44 (Wyo.1986), we recognized that in cases involving defective products, causes of action in negligence and/or for breach of warranty may not be adequate to provide recompense to an injured party. This Court, therefore, recognized a cause of action, based upon the Restatement (Second) of Torts § 402A (1965), for strict liability in favor of a party injured by a defective product.   *Ogle*, 716 P.2d at 341–42.   Section 402A states:

> 402A.   *Special Liability of Seller of Product for Physical Harm to User or Consumer*
>
> (1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if
>> (a) the seller is engaged in the business of selling such a product, and
>> (b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.
>
> (2) The rule stated in Subsection (1) applies although
>> (a) the seller has exercised all possible care in the preparation and sale of his product, and
>> (b) the user or consumer has not bought the product from or entered into any contractual relation with the seller.

*Id.*

[¶ 18]   In   accordance   with § 402A, we adopted the following elements of a strict liability claim in Wyoming:

(1) that the sellers were engaged in the business of selling the product that caused the harm;

(2) that the product was defective when sold;

(3) that the product was unreasonably dangerous to the user or consumer;

(4) that the product was intended to and did reach the consumer without substantial change in the condition in which it was sold; and

(5) that the product caused physical harm to the plaintiff/consumer.

*Id.* at 344.   As the strict liability elements demonstrate, a plaintiff must show the product was defective when the seller sold it. *Campbell v. Studer, Inc.*, 970 P.2d 389, 392 (Wyo.1998);   *McLaughlin v. Michelin Tire Corp.*, 778 P.2d 59, 64 (Wyo.1989).   Stated generally, a "defective product" is one which is "not reasonably safe" or is "unreasonably dangerous" to the user or consumer.   *Campbell*, 970 P.2d at 392, quoting *McLaughlin*, 778 P.2d at 64.   In contrast, "[i]f a product is safe for normal handling and consumption, it is not defective."   *Campbell*, 970 P.2d at 392. It is not enough to show that an injury occurred during use of the product to establish it was defective.   *Id.* at 394.   Instead, a plaintiff must show a defect in the product, which he may do either by presenting evidence of a specific defect or by inference. *Sims*, 751 P.2d at 360–61.

[¶ 19]   The inference of defect rule was recognized by this Court in *Sims*. Restatement (Second) of Torts § 402A, cmt (g) provides the basis of the inference of defect rule. We explained in *Sims:*

> As stated in comment g of section 402A, supra:
>> "The seller is not liable when he delivers the product in a safe condition, and subsequent mishandling or other causes make it harmful by the time it is consumed.   The burden of proof that the product was in a defective condition at the time that it left the hands of the particular seller is upon the injured plaintiff;   and unless evidence can be produced which will support the conclu-

sion that it was then defective, the burden is not sustained."

From the language in comment g, it is clear that section 402A, supra, applies only when the product is shown to have been unreasonably dangerous at the time it left the seller's hands. There is, however, an inference that a product was defective at the time it left the seller's hands if a prima facie case can be presented that there was no abnormal use of the product or that there were no reasonable secondary causes for the defect. In *Valentine v. Ormsbee Exploration Corporation*, Wyo., 665 P.2d 452, 462 (1983), we quoted with approval the rule set out in *Tweedy v. Wright Ford Sales, Inc.*, 64 Ill.2d 570, 2 Ill.Dec. 282, 285, 357 N.E.2d 449, 452 (1976):

> "A prima facie case that a product was defective and that the defect existed when it left the manufacturer's control is made by proof that in the absence of abnormal use or reasonable secondary causes the product failed 'to perform in the manner reasonably to be expected in light of [its] nature and intended function.'" (Emphasis added.)

*Id.* at 360–61. In *Sims*, we rejected the plaintiffs' contention that mere proof of a product malfunction was sufficient to create an inference that the product was defective. Instead, the plaintiff has the "additional burden to present evidence that there was no abnormal use and no reasonable secondary causes for the malfunction." *Id.* at 361.

[¶ 20] Apparently unable to present evidence of a specific defect in the Port–A–Cath, Mr. Rohde attempted to prove the device was defective using the inference of defect rule. He claimed he was entitled to an inference that the Port–A–Cath was defective because it fractured while implanted in his body. Relying on *Sims*, Smiths Medical maintained Mr. Rohde was not entitled to an inference of defect because compression between the clavicle and first rib, compounded by Mr. Rohde's weight gain after implan-

tation, was a reasonable secondary cause of the fracture.[6]

[¶ 21] The risk of clavicle/first rib compression was outlined in the literature supplied to physicians who used the device. The Instructions for Use of the Port–A–Cath stated in relevant part:

> **WARNING:** When introducing the catheter percutaneously into the subclavian vein, there is a risk that it may be placed too medially near the angle between the clavicle and first rib. This could increase the inherent risk of compression of the catheter, which may result in damage, rupture, drug extravasation, or catheter fragmentation with possible embolization.

In support of its claim that clavicle/first rib compression was a reasonable secondary cause of the fracture of Mr. Rohde's Port–A–Cath, Smiths Medical pointed to the testimony of Dr. Poore's expert witness, Michael Fenoglio, M.D. Dr. Fenoglio stated, although he could not be absolutely certain that the Port–A–Cath fractured because of the compression, he believed that is what happened in Mr. Rohde's case:

> Q. Okay. Based on your knowledge of Mr. Rohde's weight gain from the time he had the device implanted to the time it was discovered that it fractured, and based on Mr. Rohde's clavicle size and the placement in Mr. Rohde of the device near the clavicle and first rib, and your understanding of how things shift particularly in an obese patient, is it reasonable in your mind to assume that the device fractured—the catheter fractured because of the interaction between the clavicle and the first rib?
>
> [Objection]
>
> A. I personally think that's probably what happened, but I can't say with 100 percent certainty that that's what happened. But that's my opinion because of the weight gain, because of the shifting, because of the movements that happened.

---

6. Smiths Medical also argued in the district court that mechanical damage to the catheter was another reasonable secondary cause of the Port–A–Cath's fracture. It asserted the Port–A–Cath may have broken because medical personnel damaged it by either puncturing or applying too much pressure to the catheter. Because compression was clearly one reasonable secondary cause of the device's fracture, we do not need to determine whether mechanical damage is another reasonable cause.

[¶ 22] Mr. Rohde did not present any evidence to the district court to counter Smiths Medical's showing that compression was a reasonable secondary cause of the Port–A–Cath's fracture. Thus, he failed to meet his burden to discount reasonable secondary causes of the product's malfunction as required by *Sims.* Indeed, Mr. Rohde does not seriously contest the district court's ruling that he did not meet his burden under the inference of defect rule as set out in *Sims.* He suggests, instead, that this Court should modify the inference of defect rule to relieve product liability plaintiffs of the burden of showing no reasonable secondary causes for a product's failure. In making this argument, he relies on two Illinois cases which, he claims, have relaxed the requirements for showing a defect using the inference of defect rule: *Weedon v. Pfizer, Inc.,* 332 Ill. App.3d 17, 265 Ill.Dec. 956, 773 N.E.2d 720 (2002); *Tweedy v. Wright Ford Sales, Inc.,* 64 Ill.2d 570, 2 Ill.Dec. 282, 357 N.E.2d 449 (1976).

[¶ 23] The facts in *Weedon* are very similar to the case at bar. Mr. Weedon had a Lifeporte implanted in his chest to aid in the administration of chemotherapy treatments for his Hodgkin's disease. *Weedon,* 265 Ill. Dec. 956, 773 N.E.2d at 722. The site of the venous access device became inflamed and Mr. Weedon's physicians decided to remove (explant) the device. After explantation, the area in Mr. Weedon's chest where the device had been located continued to deteriorate, resulting in a large hole in his chest. *Id.*

[¶ 24] Like Mr. Rohde, the plaintiff in *Weedon* did not present any evidence of a specific defect in the device. *Id.* He attempted, however, to establish a defect by circumstantial evidence. *Id.* 265 Ill.Dec. 956, 773 N.E.2d at 722–23, citing *Doyle v. White Metal Rolling & Stamping Corp.,* 249 Ill.App.3d 370, 188 Ill.Dec. 339, 618 N.E.2d 909 (1993). In particular, he maintained that the device had improperly leaked or "extravasated," allowing the chemotherapy drugs to come into contact with the tissues in his chest, causing his injuries. The defendants suggested that Mr. Weedon's injuries were caused by infection, rather than leakage from the venous access device, or if the product leaked, it was because of a medical mistake rather than a defect in the device. *Weedon,* 265 Ill.Dec. 956, 773 N.E.2d at 725–31. The district court agreed with the defendants and granted summary judgment in their favor. *Id.* 265 Ill.Dec. 956, 773 N.E.2d at 721.

[¶ 25] On appeal, Mr. Weedon argued the district court should not have granted summary judgment in favor of the manufacturers because he had presented evidence which tended to negate other reasonable causes of his injury. *Id.* 265 Ill.Dec. 956, 773 N.E.2d at 725. The court of appeals agreed with Mr. Weedon because he had offered ample deposition testimony indicating that medical tests had shown he was not suffering from an infection and the cause of his injuries was leakage or extravasation from the venous access device. *Id.* 265 Ill.Dec. 956, 773 N.E.2d at 725–730. Moreover, there was evidence ruling out medical mistake as a cause of the extravasation. *Id.* 265 Ill.Dec. 956, 773 N.E.2d at 730. The court of appeals reversed the summary judgment in favor of the defendant manufacturers, finding Mr. Weedon's evidence was sufficient to raise genuine issues of material fact about the cause of his injuries and/or malfunction of the product. *Id.* 265 Ill.Dec. 956, 773 N.E.2d at 731.

[¶ 26] We note an analytical difference between *Weedon* and our precedent. The court in *Weedon* considered other causes of the *plaintiff's injuries.* Our law, as expressed in *Sims* and consistent with Restatement (Second) of Torts § 402A, comment g, requires the plaintiff to show he is entitled to an inference that the product was defective because there are no other reasonable causes for the *product's failure.* Other causes of the plaintiff's injuries should be analyzed in determining whether the product's defect was the proximate cause of the injuries (the fifth element of a strict liability claim), not in determining whether the product was defective (the second element of a strict liability claim). Despite the difference between Wyoming law and the analysis employed in *Weedon,* the Illinois court of appeals still required Mr. Weedon to offer evidence to counter the other causes championed by the manufacturers. Thus, the *Weedon* decision

does not support Mr. Rohde's argument that he should be relieved of the burden of presenting evidence to refute the secondary cause identified by Smiths Medical.

[¶ 27]  Likewise, in *Tweedy* the court held the plaintiff established a *prima facie* case that a product was defective by presenting "proof that in the absence of abnormal use or reasonable secondary causes the product failed 'to perform in the manner reasonably to be expected in light of (its) nature and intended function.'" *Tweedy*, 2 Ill.Dec. 282, 357 N.E.2d at 452.  In other words, in order to qualify for an inference that the product was defective, the plaintiff was required to offer evidence discounting other causes of the product's failure.  Consequently, the Illinois cases cited by Mr. Rohde simply do not support a relaxation of the *Sims* requirements for establishing an inference of defect.

[¶ 28]  Mr. Rohde also suggests that products liability plaintiffs should not be required to present evidence that secondary causes did not cause the product's malfunction because, in any given case, there are innumerable possible causes and it is unduly burdensome for plaintiffs to disprove all of them. He claims it should be enough to establish that the device malfunctioned and did not, therefore, perform "in a manner reasonably to be expected in light of its nature and intended use."  We believe Mr. Rohde overstates the burden imposed on plaintiffs by the inference of defect rule.  In this case, Smiths Medical presented evidence of a reasonable secondary cause of the Port–A–Cath's fracture, i.e. clavicle/first rib compression.  Mr. Rohde was not required to disprove numerous or vague secondary causes. Instead, his burden, at the summary judgment stage, was simply to present evidence to establish a material issue of fact on the reasonable secondary cause advanced by Smiths Medical.  He did not present any evidence to satisfy that burden.

[¶ 29]  We recognize it may have been difficult for Mr. Rohde to meet the challenge of showing a specific defect given the unfortunate fact that the device was discarded after it was removed.  Nevertheless, if the Port–A–Cath was defectively designed making it prone to fracture then, presumably, he could have located an expert to analyze the design and provide his opinion on such a specific defect.  In the alternative, Mr. Rohde could have qualified for an inference of defect by presenting expert evidence to discount the other causes of the fracture identified by Smiths Medical.  Mr. Rohde's failure to meet his burden to establish a specific defect or an inference of defect in accordance with *Sims* does not justify expanding the inference of defect rule to allow a plaintiff to proceed to trial simply because the product failed.  Such a holding would unduly expand product liability jurisprudence without justification.  We, therefore, conclude the district court properly granted summary judgment in favor of Smiths Medical on Mr. Rohde's claim that the Port–A–Cath was defective.

[¶ 30]  We turn now to a different argument raised by Mr. Rohde.  In his statement of the issue on appeal, he only contested the district court's refusal to apply the inference of defect rule in his case.  He did not articulate an issue regarding the summary judgment on his failure to warn claim. Nevertheless, he attempts to dovetail an issue about the warnings into his appellate argument, stating the warnings do not "immunize [Smiths Medical] from liability for a defective product" and arguing there are genuine issues of material fact about the adequacy of Smiths Medical's warnings about the Port–A–Cath.

[¶ 31]  Mr. Rohde's argument improperly blends two distinct theories of strict liability: 1) a defect in the product itself;  and 2) failure to warn about an inherent risk of a non-defective product. An American Law Report annotation explains the difference between the theories:

In the field of products liability, the doctrine of strict liability in tort generally imposes liability upon the supplier of a defective product for injury caused thereby, without requiring proof of negligence, and notwithstanding lack of reliance on warranty.  As expressed in § 402A of the Restatement of Torts (the version of strict liability adopted in many jurisdictions), such liability attaches with respect to injury caused by any product in a defective condition unreasonably dangerous to the

user or consumer or to his property. However, notwithstanding the requirement that the product be in a defective condition unreasonably dangerous to the user or the consumer, it is apparently recognized in all jurisdictions which have adopted the doctrine of strict liability in tort, that the doctrine applies even though the product is flawlessly manufactured and designed but is nevertheless dangerous or likely to cause harm unless properly used. In such cases the doctrine is invoked, under the appropriate circumstances, if there is a failure to warn or instruct as to possible danger, with many of the courts which have adopted the Restatement language of the doctrine stating that the particular product is in a "defective condition unreasonably dangerous" by virtue of the absence of adequate warning or instruction.

Although liability arising from faulty manufacture or design and liability arising out of failure to warn of danger are covered under the same rule, the two categories are conceptually different. Fault in production or design is something over which a manufacturer has control, while the danger for which warning is required is one generally caused by a failure of scientific or technological knowledge to provide a safe product. In the case of the former, the manufacturer can at least theoretically produce a fault-free product. In the case of the latter, the danger is not in the manufacture but in the product itself, and its availability is deemed beneficial notwithstanding the presence of danger. Furthermore, since almost every product would appear to have some potential for inflicting harm, and since it would appear that instructions and warnings could not reasonably be required in the marketing of every product, a rule as to standards of conduct must be applied in determining the circumstances under which a warning or instruction is required so as to keep the product from being considered "defective" without the warning.

Allan E. Korpela, LL.B., Failure to Warn as Basis of Liability Under Doctrine of Strict Liability in Tort, 53 A.L.R.3d 239, 243, § 2[a] (1973) (hereinafter Annotation).

[¶ 32] Thus, if the product itself is not defective but may be unreasonably dangerous if it is used improperly, a plaintiff may show a "defect" by establishing that the manufacturer failed to warn about dangers associated with the product. *See, e.g., Jacobs v. Dista Products Co.,* 693 F.Supp. 1029 (D.Wyo.1988) (considering a claim that defendant manufacturer failed to adequately warn about the dangers of a prescription drug); *Braaten v. Saberhagen Holdings,* 137 Wash. App. 32, 151 P.3d 1010 (2007); *Hurley v. Heart Physicians, P.C.,* 278 Conn. 305, 898 A.2d 777 (2006). Unlike traditional strict liability claims, a claim for failure to provide adequate warnings incorporates some negligence components in determining whether a warning is necessary and/or whether the warnings provided were adequate. *See,* Annotation, 53 A.L.R.3d at 243, § 2[a]. The efficacy and adequacy of the warnings Smiths Medical supplied to Port–A–Cath users was not, however, implicated under Mr. Rohde's "inference of defect" theory.

[¶ 33] We realize that Mr. Rohde alleged in his complaint that Smiths Medical was strictly liable because it did not adequately warn of the dangers associated with using the Port–A–Cath. Smiths Medical moved for summary judgment on the failure to warn claim, maintaining that it adequately warned Mr. Rohde's physicians about the risk of fracture. Smiths Medical submitted, as evidence, the warnings contained in the Port–A–Cath's instructions for use and the deposition testimony of one of its employees who stated that the warnings accompanied the product. Smiths Medical argued that it was entitled to summary judgment because Mr. Rohde had "proffered no evidence that the Instructions for Use [were] in any way defective or insufficient." In reply, Mr. Rohde stated that Dr. Poore did not warn him about the risk of fracture,[7] but he did not point to any evidence or present any argument that the

7. Interestingly, Mr. Rohde did not oppose summary judgment in favor of Dr. Poore, the "learned intermediary" whose responsibility it was to pass on Smiths Medical's warning to the patient.

warnings provided by Smiths Medical to Dr. Poore were inadequate.

[¶ 34] The district court granted summary judgment in favor of Smiths Medical on Mr. Rohde's failure to warn claim. Obviously, on the record before us, the district court's decision was proper since Mr. Rohde failed to present any evidence or, for that matter, any argument that a genuine issue of material fact existed on the adequacy of Smiths Medical's warnings about the risk of fracture.

## CONCLUSION

[¶ 35] Smiths Medical was entitled to a summary judgment on Mr. Rohde's claim that the Port–A–Cath was defective because he failed to fulfill his obligation, under the inference of defect rule, to present evidence creating a material issue of fact on whether there were reasonable secondary causes of the Port–A–Cath's failure. Moreover, the district court properly granted summary judgment on Mr. Rohde's failure to warn claim because he presented no evidence that the warnings provided by Smiths Medical were inadequate. Consequently, we affirm.