**Wallace and Jeanette TOLMAN, Plaintiffs,**

v.

**STRYKER CORPORATION, Defendant.**

**Case No. 13–CV–13–ABJ.**

United States District Court, D. Wyoming.

Signed June 4, 2015.

Randy L. Royal, Greybull, WY, Todd H. Hambrick, Todd Hambrick, PC, Casper, WY, for Plaintiffs.

Isaac Nathan Sutphin, Matthew J. Micheli, Holland & Hart, Cheyenne, WY, Mario Horwitz, Sedgwick LLP, Los Angeles, CA, for Defendant.

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

ALAN B. JOHNSON, District Judge.

Defendant Stryker Corporation's *Motion for Summary Judgment* (Doc. No. 35), Plaintiffs Wallace and Jeanette Tolman's response (Doc. No. 38), and Defendant's reply (Doc. No. 38) have come before the Court for consideration. After reviewing the parties' submissions, the applicable law, and being fully advised, the Court finds that the motion should be **GRANTED** for the reasons stated below.

## BACKGROUND

On September 8, 2008, Wallace Tolman broke his hip and femur in an ATV accident. That same day he went to a hospital in Billings, Montana, where Dr. James Elliot surgically installed a medical device called a Gamma Nail # 3 to stabilize his hip and femur. Stryker Corporation manufactures the Gamma Nail # 3.

Following the surgery, Mr. Tolman began the rehabilitation process aided by Dr. Elliot. Mr. Tolman's fractures began the healing process and the union of the fracture sites progressed. In December, Dr. Elliot removed the walker and crutches restrictions that had been placed on Mr. Tolman because it was time to start putting more stress on the fractures so they would heal stronger. At that point, Mr. Tolman began walking unassisted and without a limp.

At his home in Big Horn County Wyoming, on December 31, 2008, Mr. Tolman heard a loud "crack" and began experiencing intense pain in his hip and leg as he was preparing to take a shower. A few days later, Mr. Tolman again visited Dr. Elliot and learned that the Gamma Nail # 3 had snapped into two pieces. Dr. Elliot operated on Mr. Tolman the next day and replaced all of the hardware. Thereafter, Mr. Tolman has undergone three additional surgeries as a result of the Gamma Nail # 3's failure. His leg never healed properly and the last surgery left his injured leg an inch shorter than the other.

On December 19, 2012, Mr. Tolman and his wife, Jeanette Tolman, brought suit against Stryker under the diversity jurisdiction of this Court, alleging claims based on negligence, strict products liability, breach of the implied warranties, and loss of consortium. Doc. No. 1. By its Order of February 22, 2013, this Court dismissed Plaintiffs' claim for breach of the implied warranties, finding that the claim was time barred. Doc. No. 20. On July 7, 2014, Stryker filed a *Motion for Summary Judgment* under Rule 56 of the Federal Rules of Civil Procedure. Doc. No. 35. Stryker generally argues that there is no genuine dispute as to any material fact that the Gamma Nail # 3 was defective. Plaintiffs filed a response and Defendant filed a reply. Docs. No. 38, 39.

## STANDARD OF REVIEW

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). A dispute of fact is genuine if a reasonable juror could resolve the disputed fact in favor of either side. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A dispute of fact is material if under the substantive law it is essential to the proper disposition of the claim. *Adler v. Wal–Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir.1998). When the Court considers the evidence presented by the parties, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn" in the non-movant's favor. *Anderson*, 477 U.S. at 255, 106 S.Ct. 2505.

The party moving for summary judgment has the burden of establishing the nonexistence of a genuine dispute of material fact. *Lynch v. Barrett*, 703 F.3d 1153, 1158 (10th Cir.2013). The moving party can satisfy this burden by either (1) offering affirmative evidence that negates an essential element of the nonmoving party's claim, or (2) demonstrating that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim. *See* Fed.R.Civ.P. 56(c)(1)(A)-(B).

Once the moving party satisfies this initial burden, the nonmoving party must

support its contention that a genuine dispute of material fact exists either by (1) citing to particular materials in the record, or (2) showing that the materials cited by the moving party do not establish the absence of a genuine dispute. *See id.* The nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Rather, to survive a summary judgment motion, the nonmoving party must "make a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Further, when opposing summary judgment, the nonmoving party cannot rest on allegations or denials in the pleadings but must set forth specific facts showing that there is a genuine dispute of material fact for trial. *See Travis v. Park City Mun. Corp.,* 565 F.3d 1252, 1258 (10th Cir.2009).

When considering a motion for summary judgment, the court's role is not to weigh the evidence and decide the truth of the matter, but rather to determine whether a genuine dispute of material fact exists for trial. *Anderson,* 477 U.S. at 249, 106 S.Ct. 2505. Credibility determinations are the province of the fact-finder, not the court. *Id.* at 255, 106 S.Ct. 2505.

### DISCUSSION

 Defendant's motion presents one central question—whether Plaintiffs are entitled to an inference of defectiveness. Under Wyoming law, the elements of a claim for strict products liability are as follows:

(1) that the sellers were engaged in the business of selling the product that caused the harm;

(2) that the product was defective when sold;

(3) that the product was unreasonably dangerous to the user or consumer;

(4) that the product was intended to and did reach the consumer without substantial change in the condition in which it was sold; and

(5) that the product caused physical harm to the plaintiff/consumer.

*Rohde v. Smiths Medical,* 2007 WY 134, ¶ 18, 165 P.3d 433, 437 (Wyo.2007) (quoting *Ogle v. Caterpillar Tractor Co.,* 716 P.2d 334, 344 (Wyo.1986)). "As the strict liability elements demonstrate, a plaintiff must show the product was defective when the seller sold it." *Id.* (citing *Campbell v. Studer, Inc.,* 970 P.2d 389, 392 (Wyo.1998); *McLaughlin v. Michelin Tire Corp.,* 778 P.2d 59, 64 (Wyo.1989)). The Wyoming Supreme Court has explained, "[i]t is not enough to show that an injury occurred during use of the product to establish it was defective. Instead, a plaintiff must show a defect in the product, which he may do either by presenting evidence of a specific defect or by inference." *Id.* (citing *Campbell,* 970 P.2d at 394; *Sims v. General Motors Corp.,* 751 P.2d 357, 360–61 (Wyo.1988)). Moreover, "[t]he requirement of showing a defect is one element common to every products liability case, whether it is brought on a theory of negligence, breach of an express or implied warranty, strict tort liability, or a combination of theories." *McLaughlin v. Michelin Tire Corp.,* 778 P.2d 59, 64 (Wyo.1989).

 The inference of defectiveness arises "if a prima facie case can be presented that there was no abnormal use of the product or that there were no reasonable secondary causes for the defect." *Loredo v. Solvay America, Inc.,* 2009 WY 93, *11 ¶ 20, 212 P.3d 614, 633 (Wyo.2009) (quoting *Rohde,* ¶ 19, 165 P.3d at 437) (internal quotation marks omitted). As is

pertinent here, the inference of defectiveness "requires the plaintiff to show he is entitled to an inference that the product was defective because there are no other reasonable causes for the product's failure." *Rohde,* ¶ 26, 165 P.3d at 440. At the summary judgment stage, a plaintiff relying on the inference of defectiveness has the burden to present evidence to establish a genuine dispute of material fact on the reasonable secondary cause advanced by the defendant. *Id.* at ¶ 28, 165 P.3d at 440.

In *Rohde,* Mr. Rohde was injured when the Port–A–Cath implanted in his chest fractured. ¶¶ 4–13, 165 P.3d at 434–436. Mr. Rohde was unable to present evidence of a specific defect, but attempted to prove that the Port–A–Cath was defective using the inference of defect rule. *Id.* at ¶ 20, 165 P.3d at 438. Mr. Rohde claimed the inference of defectiveness applied because the Port–A–Cath fractured while it was implanted in his body. *Id.* On the other hand, Smiths Medical, the manufacturer of the Port–A–Cath, argued that "compression between the clavicle and first rib, compounded by Mr. Rohde's weight gain after implantation, was a reasonable secondary cause of the fracture." *Id.* The court noted that Mr. Rohde did not present any evidence to counter Smiths Medical's showing that compression was a reasonable secondary cause of the Port–A–Cath's failure. *Id.* at ¶ 22, 165 P.3d at 439. As such, the court concluded that "he failed to meet his burden to discount reasonable secondary causes of the product's malfunction." *Id.*

■ Defendant argues in its motion for summary judgment that Plaintiff has presented no evidence of a specific defect that caused the Gamma Nail # 3 to fail. Defendant then argues that Plaintiffs cannot establish they are entitled to an inference of defectiveness. Defendant asserts that nonunion is a reasonable secondary cause

of the Gamma Nail # 3's failure and Plaintiffs cannot present any admissible evidence that it was not.

In response, Plaintiffs made no attempt to argue that there is evidence of a specific defect that caused the Gamma Nail # 3 to fail. Instead, Plaintiffs only rely on the inference of defect rule. Plaintiffs posit that Dr. Elliot's medical records discount Defendant's reasonable secondary cause theory, noting that "[t]he medical records provided and the expert treating doctor's designated testimony not only creates a material issue of fact for the jury to decide, it disproves the claim, [sic] entirely." Doc. No. 38, p. 8. To support this allegation, Plaintiffs cite to four pages of Dr. Elliot's medical records and their own expert designation. *See* Doc. No. 38, p. 9 (citing Docs. No. 31; 36–1, pp. 55, 56, 80, 82).

In reply, Defendant cites to Dr. Elliot's Operative Report of January 3, 2009. On January 3, 2009, Dr. Elliot removed the broken Gamma Nail # 3 from Mr. Tolman's leg. In his operative report, Dr. Elliot wrote the following: "PRINCIPAL DIAGNOSIS: Failed gamma nail with nonunion, right subtrochanteric hip fracture. POSTOPERATIVE DIAGNOSIS: Failed gamma nail with nonunion, right subtrochanteric hip fracture." Doc. No. 36–1, p. 73. Defendant argues that the medical records establish that nonunion is a reasonable secondary cause and according to Plaintiffs' non-retained expert, Dr. Elliot, nonunion is the cause of the Gamma Nail # 3's failure. Defendant then argues that Plaintiffs have failed to carry their burden of presenting evidence creating a genuine dispute of material fact on the question of whether there were reasonable secondary causes of the Gamma Nail # 3's failure.

Plaintiffs' attempt to rely on the four pages of Dr. Elliot's medical records is

unpersuasive. The first page of records is a report of a physical exam that occurred on October 31, 2008, two months before the Gamma Nail # 3 failed. Doc. No. 36–1, p. 55. In that report, Dr. Elliot noted the following:

> Currently doing well following ORIF of a severe subtrochanteric chip fracture. The x-ray show excellent maintenance of our reduction. There still is the area about the lateral aspect of the subtrochanteric region but it appears to be showing some signs are healing in as well as showing diffuse healing up throughout the leg.

Doc. No. 36–1, p. 55. It is difficult if not impossible to understand how a medical record that states the bone is not healed could create a genuine issue of material fact that nonunion is not a reasonable secondary cause of the Gamma Nail # 3's failure.

The second page is a report of a physical exam that occurred on December 19, 2008. Doc. No. 36–1, p. 56. At that time, Dr. Elliot reported the following: "AP and lateral views of the hip and femur taken which show further healing, some form of some heterotopic ossification. I do think he'll heal in the subtrochanteric deficit." *Id.* at 56. In other words, twelve days before the Gamma Nail # 3 failed, Mr. Tolman's bone still had not yet fully healed.

The third page of medical records is a report of an exam that occurred on January 2, 2009, the day Mr. Tolman saw Dr. Elliot after the Gamma Nail # 3 failed. *Id.* at 80. In that record, Dr. Elliot reported that "[t]he remaining aspects of the subtrochanteric facture appear to be healed below the immediate subtrochanteric region...." *Id.* The Fourth page of medical records is a report of an exam that occurred on January 13, 2009. *Id.* at 82. That record states nothing in regard to the bone healing or the cause of the Gamma Nail # 3's failure. *See id.* at 82.

The third page of medical records relied upon by Plaintiffs could possibly create a genuine issue of material fact that nonunion was not a reasonable cause of the Gamma Nail # 3's failure if it were not for Dr. Elliot's Operative Report of January 3, 2009. From the x-ray taken that same day, Dr. Elliot concluded "[t]he remaining aspects of the subtrochanteric facture *appear to be healed* below the immediate subtrochanteric region...." Doc. No. 36, p. 80. However, Dr. Elliot's postoperative diagnosis was "Failed gamma nail with nonunion." *Id.* at 73. Moreover, the report explained "[t]here was a bony defect, and our plan had been for him to return to clinic, and if he was showing no sign of healing, we would consider bone grafting. However, the gamma nail has now failed." *Id.* As explained above, a dispute of fact is genuine if a reasonable juror could resolve the disputed fact in favor of either side. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). No reasonable juror could conclude from Dr. Elliot's medical records that nonunion was not a reasonable secondary cause of the Gamma Nail # 3's failure.

Plaintiffs reliance on their *Expert Witness Designation* as evidence that there is no reasonable secondary cause of the Gamma Nail # 3's failure is unavailing. In Plaintiffs' *Expert Witness Designation* Plaintiffs noted that all four experts were not retained or specifically employed to provide expert testimony in the case "and therefore his medical records will act as his expert reports." Doc. No. 31. Plaintiffs failed to cite to any particular parts of the record to support the conclusion that nonunion is not a reasonable secondary cause of the Gamma Nail # 3's failure. *See* Fed.R.Civ.P. 56(a)(1) ("A party assert

that a fact ... is genuine dispute must support that assertion by: (A) citing to particular parts of materials in the record ... or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."); Doc. No. 26 ("The party opposing the motion for summary judgment shall include a concise statement of the material facts of record as to which it contends that there exists a genuine issue for trial, complete with page and pinpoint references to affidavits, depositions and other documents."). Having reviewed all the medical records relied upon by Plaintiffs' experts, the Court was unable to locate any reference to any opinion that nonunion was not a reasonable secondary cause of the Gamma Nail # 3's failure. In fact, the records seem to point in the other direction. *See, e.g.,* Doc. No. 36–1, p. 95 ("He healed everything distally, but there was a nonunion of the subtrochanteric and he failed the gamma nail."); Doc. No. 36–1, p. 161 ("He had originally a comminuted subtrochanteric facture with extension which required fixation with a gamma nail and cerclage wiring. This went on to a nonunion and failed the rod.").

At the summary judgment stage, Plaintiffs had the burden of showing that they are "entitled to an inference that the product was defective because there are no other reasonable causes for the product's failure." *Rohde,* 2007 WY 134, ¶ 26, 165 P.3d at 439. Plaintiffs' attempts to rely on the medical records alone are insufficient. Plaintiffs could have hired an expert to explain that nonunion was not a reasonable secondary cause of the Gamma Nail # 3's failure, but for whatever reason did not do so. Plaintiffs also could have relied on an affidavit or declaration from Mr. Tolman's treating physicians to explain that nonunion was not a reasonable secondary cause of the Gamma Nail # 3's failure, but also did not do so. In the end, Plaintiffs

failed to meet their burden under the inference of defect rule. As a result, the Court finds that Defendant is entitled to judgment as a matter of law on Plaintiffs' strict products liability claim because there is no genuine dispute of material fact that the Gamma Nail # 3 was defective.

As explained above, "[t]he requirement of showing a defect is one element common to every products liability case, whether it is brought on a theory of negligence, breach of an express or implied warranty, strict tort liability, or a combination of theories." *McLaughlin,* 778 P.2d at 64. Because the Court finds that there is no genuine dispute of material fact that the Gamma Nail # 3 was defective, Defendant is also entitled to judgment as a matter of law on Plaintiffs' negligence claim.

As a final note, the Court acknowledges that Plaintiffs alleged a cause of action for loss of consortium. Loss of consortium, however, is actionable only if there is an underlying claim for liability. *Verschoor v. Mountain West Farm Bureau Mut. Ins. Co.,* 907 P.2d 1293, 1301 (Wyo.1995) ("loss of consortium is derivative of actions sounding in tort, and contemplates underlying liability to the spouse for tortious bodily harm"). As the Court finds that Defendant is entitled to judgment as a matter of law on Plaintiffs' claims for strict products liability and negligence, Defendant is also entitled to judgment as a matter of law on the loss of consortium claim.

### CONCLUSION

Defendant is entitled to summary judgment on Plaintiffs' claim for strict products liability because they failed to fulfill their obligation, under the inference of defect rule, to present evidence creating a genuine dispute of material fact as to whether there were reasonable secondary causes of the Gamma Nail # 3's failure. As the

Court finds that there is no genuine dispute of material fact that the Gamma Nail # 3 was defective, Stryker is also entitled to judgment as a matter of law on Plaintiffs' claims for negligence and loss of consortium. Accordingly, it is therefore

**ORDERED** that Defendant's *Motion for Summary Judgment* (Doc. No. 35) shall be, and is, **GRANTED.**

**Judgment will be entered accordingly.**